IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-00330

**Muminatou Bah**,

               Plaintiff,

v.

**Sampson Bladen Oil Company, Inc. d/b/a Han-Dee Hugo's**,

               Defendant.

**Order**

      Plaintiff Muminatou Bah asked the court to compel Defendant Sampson Bladen Oil Company, Inc., who does business as Han-Dee Hugo's, to produce additional metadata in connection with electronically stored information ("ESI") responsive to her discovery requests. Mot. to Compel, D.E. 26. Bah also wants the court to relieve her of the obligation to sit for a deposition until Han-Dee Hugo's complies with its discovery obligations. And, finally, Bah requests that the court sanction Han-Dee Hugo's for resisting and delaying the discovery process.

      The central question in Bah's motion is what obligations the court and the Federal Rules placed on the parties with respect to producing metadata. Resolving that question will allow the court to determine whether Han-Dee Hugo's fulfilled its discovery obligation when it produced information from some, but not all, of the available metadata fields. Ultimately, the court concludes that Han-Dee Hugo's production complies with the Joint Report and the Federal Rules since it produced the ESI in a reasonably usable format. As a result, the court denies Bah's motion.

## I. Background

Bah sued Han-Dee Hugo's, her former employer, for race-based employment discrimination. Comp., D.E. 1. At the outset of discovery, the parties submitted a Joint Rule 26(f) Report that discussed, among other things, how they would produce ESI. They agreed that most ESI should be produced in TIFF[1] format. Joint Report at 5, D.E. 15. And they agreed that some types of ESI, like Excel spreadsheets, PowerPoint files, and audio-visual files, should be produced in native format.[2] *Id.* The parties' Joint Report also stated that when a party produced ESI in TIFF format, the production "would also include metadata and searchable, extracted text." *Id.* But the parties never discussed the scope of metadata that they needed to include. Hr'g Tr. at 12:12–14, D.E. 38. The court's Case Management Order adopted this portion of the Joint Report. Case Management Order § A(4), D.E. 16.

Bah then served requests for production on Han-Dee Hugo's. Those requests do not specify the metadata that should accompany Han-Dee Hugo's responses. Bah's First Set of Reqs. for Produc. of Docs., D.E. 33–2.

Han-Dee Hugo's eventually produced about 2,100 documents consisting of 13,000 pages in TIFF format and a handful of documents in native format. Resp. in. Opp. to Mot. to Compel at 2, D.E. 29. Its production included emails, HR documents, Bah's employment file, and other

---

[1] TIFF is an "electronic image of a paper document, which does not contain source metadata." *In re Jemsek Clinic, P.A.*, Nos. 06-31766 & 06-31986, 2013 WL 3994663, at *16 n.3 (Bankr. W.D.N.C. Aug. 2, 2013).

[2] "Native format is the 'default format of a file,' access to which is 'typically provided through the software program on which it was created.'" *Aguilar* v. *ICE*, 255 F.R.D. 350, 364 n.4 (S.D.N.Y. 2008) (quoting *In re Priceline.com Inc. Sec. Litig.*, 233 F.R.D. 88, 89 (D. Conn. 2005)).

employee complaints. Hr'g Tr. at 8:1–14. A load file[3] containing searchable, extracted text and 13 metadata fields accompanied the production. Resp. in. Opp. to Mot. to Compel at 2.

Three weeks after receiving the production, Bah told Han-Dee Hugo's that its production was "completely unusable[.]" Letter from Gilda Hernandez to Nathaniel Pencook at 1 (Mar. 11, 2024), D.E. 27–5. After discussion between the parties and their ESI vendors, however, it became clear that the production was usable but it was not as easily searchable as Bah would like. Email from Hernandez to Pencook (Mar. 15, 2024 1:12 p.m.), D.E. 27–7 at 4.

Bah and her vendor claimed that Han-Dee Hugo's needed to provide more metadata fields to allow her to easily sort, search, and process the production. For example, according to Bah, as things currently stand, she cannot "filter the documents by date and would instead need to search each specific date as text within the TIFF file[.]" Mem. in Supp. at 2. Searching the production in that way, Bah claims, would be "extremely cumbersome and time-consuming" and would increase the chance that she overlooks relevant documents. *Id.* at 2–3. Bah also maintains that the production lacks Bates numbers; "parent/child relationship fields," which would allow her ESI software to determine whether a file was included as an attachment to an email; and file extensions, which are required to allow her ESI software to properly display files. Han-Dee Hugo's generally disagrees with Bah's claims and believes the documents are readily searchable.

---

[3] "A load file is a "file that relates to a set of scanned images or electronically processed files, and indicates where individual pages or files belong together as documents, to include attachments, and where each document begins and ends," and may also include "data relevant to the individual documents, such as metadata, coded data, text, and the like." *Aguilar*, 255 F.R.D. at 355 n.3 (quoting *The Sedona Conference Glossary* 31 (2d ed. 2007), http://www.TheSedona Conference.org/content/miscFiles/TSCGlossary_12_07.pdf).

3

The parties' attempts to resolve their dispute failed. So Bah asked the court to compel Han-Dee Hugo's to produce all available metadata, among other things. The court eventually held a hearing on her motion.

During that hearing, the court attempted to learn more from Bah's counsel about her present ability to sort, search, and process the ESI produced by Han-Dee Hugo's. But she could not articulate how the search process worked. *Id.* at 27:8–13. Nor could Bah's attorney explain which metadata fields would be most helpful. *Id.* at 32:4–11. When the court asked Bah what categories were absolutely necessary, she listed every available category. *Id.* at 23:16–25, 24:1. She also conceded that she did not know exactly which metadata fields are most important. *Id.* at 32:4–9.

The court also asked about her ability to search within the production. When asked if she could search within documents for a particular word, Bah's attorney responded, "My understanding is that we cannot search them that way, Your Honor. I mean, we have to just go page by page instead of being able to search them by words." *Id.* at 26:5–9. She asserted that she "would literally have to scroll page by page to see every single document." *Id.* at 26:7–9.

The court pointed out that her statement appears to contradict the affidavit from her own ESI vendor, which suggested that the documents were text searchable. *Id.* at 26:10–21; Andrew Garrett Decl., D.E. 34–3. Bah's counsel eventually stated that she has not personally used the ESI platform. *Id.* at 27:12–16.

## II. Discussion

Bah makes two arguments in support of her claim that she is entitled to additional metadata from Han-Dee Hugo's.[4] First, she contends that Han-Dee Hugo's violated the Rules of Civil Procedure when it did not produce ESI in its native format. And second, she claims that under the Federal Rules and the Joint Report, she is entitled to all metadata fields available to Han-Dee Hugo's.

Bah's arguments are unpersuasive. To begin with, neither Rule 34 nor the Joint Report require production in native format. Instead, the parties agreed to produce most ESI in non-native format. And Bah has not shown that she is entitled to all metadata fields available to Han-Dee Hugo's. The Joint Report is ambiguous about what metadata each party must provide.

Given the lack of certainty on that issue, the court will apply Rule 34's requirement that a party must produce non-native ESI in a reasonably usable form. Courts regularly find that producing ESI in a text-searchable format qualifies as being reasonably usable. Bah has not persuaded the court that the circumstances of this case justify departing from that practice.

The court thus denies the motion to compel. And, as a result, it will also deny Bah's request for a protective order and her request for sanctions.

---

[4] Bah's brief asks the court to compel Han-Dee Hugo's to supplement its discovery responses to include the "specific b[B]ates numbers responsive to each request[.]" Mem. in Supp. at 1. But she never explains why she would be entitled to this relief. Thus she has waived any claim to that relief. *See Russell* v. *Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 n.* (4th Cir. 2014) (explaining that failing to present a legal argument waives that argument).

### A. Han-Dee Hugo's did not violate the terms of the Joint Report by producing most of its ESI in TIFF format.

Bah first argues that Han-Dee Hugo's should have produced responsive ESI in native format.[5] But this position disregards the parties' agreement in their Joint Report that most ESI should be produced in TIFF format. Joint Report at 5. Nothing in the record suggests that Han-Dee Hugo's produced documents in TIFF format that, under the parties' agreement, it should have produced in native format. This argument is unpersuasive.

### B. Bah has no right to an order compelling additional metadata from Han-Dee Hugo's since it produced ESI in a reasonably usable format.

Bah next argues that Han-Dee Hugo's violated the Joint Report and Rule 34 by producing only some of the available metadata. But given the Joint Report's ambiguity on this point, Bah's failure to specify the fields she needed in her requests for production, and the fact that Han-Dee Hugo's produced ESI in a text-searchable format, this argument is unpersuasive.

#### 1. The Joint Report does not require production of all available metadata.

Bah argues that she is entitled to receive all available metadata under the Joint Report. Mem. in Supp. of Mot. to Compel at 2. In that document the parties agreed that ESI produced in TIFF format would "include metadata and searchable, extracted text." Joint Report at 5.

---

[5] The court notes that Bah argued that "producing electronically stored information in its native format is the method the Federal Rules of Civil Procedure ordinarily contemplate" and then quotes a portion of Rule 34 regarding production of ESI in the form "in which it is ordinarily maintained." Mem. in Supp. at 5. But Bah's position is incorrect. When read in its entirety, the relevant federal rule says that "if a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms[.]" Fed. R. Civ. P. 34(b)(2)(E)(ii). So Rule 34 allows production in multiple forms, not just native format. Any doubt about that point is resolved by the Rule's 2006 Advisory Committee Note, which says, "The rule does not require a party to produce electronically stored information in the form it [sic] which it is ordinarily maintained, as long as it is produced in a reasonably usable form." Bah's counsel should ensure that future citations to statues, rules, or case law accurately represent the content of the cited material.

But the parties now dispute what they meant when they agreed that an ESI production would include metadata. Bah claims that it means all available metadata. In contrast, Han-Dee Hugo's maintains that language gives it discretion to choose what metadata to produce. The Joint Report's language is ambiguous, so the court must determine which party's interpretation should prevail.

To make that determination, the court looks to Federal Rule of Civil Procedure 34, which deals with ESI production. Under that rule, a requesting party may request that the responding party produce ESI in a particular form. Fed. R. Civ. P. 34(b)(1)(c). If "the responding party objects to a requested form—or if no form was specified in the request—the party must state the form or forms it intends to use." *Id.* 34(b)(2)(D). The Rule also provides that "[a] party need not produce the same electronically stored information in more than one form." *Id.* 34(b)(2)(E)(iii).

Rule 34 encourages the parties to be explicit about issues related to the form of production for ESI. The requesting party should explicitly state its desired form of production and the responding party should explicitly state the form in which it is willing to produce ESI. These requirements are designed to avoid the very problems confronting the court and the parties here. Stating the desired form of production in a request for production will "facilitate the orderly, efficient, and cost-effective discovery of electronically stored information." Fed. R. Civ. P. 34 Advisory Committee Note to 2006 Amendments. And stating the form in which a party intends to produce ESI "before the production occurs may permit the parties to identify and seek to resolve disputes before the expense and work of the production occurs." *Id.*

Courts deciding metadata-related issues also require parties to address those issues explicitly and promptly. For example, in *Aguilar* v. *ICE*, the court noted that "if a party wants metadata, it should 'Ask for it. Up front. Otherwise, if [the party] ask[s] too late or ha[s] already

7

received the document in another form, [it] may be out of luck.'" 255 F.R.D. 350, 357 (S.D.N.Y. 2008) (quoting Adam J. Levitt & Scott J. Farrell, *Taming the Metadata Beast*, N.Y.L.J., May 16, 2008, at 4.). Other courts have reached similar conclusions. *See In re Jemsek Clinic, P.A.*, Nos. 06–31766 & 06–31986, 2013 WL 3994663, at *7 (Bankr. W.D.N.C. Aug. 2, 2013) (denying a party's request for a "more particularized format" because "it is simply too late to do so."); *Hoehl Fam. Found.* v. *Roberts*, No. 5:19-CV-229, 2023 WL 3271517, at *1, *3, *7 (D. Vt. Apr. 13, 2023) (granting a motion to compel when the requesting party sought "all metadata" and the responding party failed to comply).

After reviewing the Federal Rules and cases involving metadata issues, the court concludes that the use of the term metadata in the Joint Report, without more, entitles neither party to all available metadata. When it comes to metadata, parties must be explicit in their discovery requests about what they expect the other side to produce. This approach ensures a more orderly and efficient discovery process. So a party who wants ESI produced in non-native format to be accompanied by all available metadata must say so.

Although the Joint Report does not require production of all available metadata, there remains the question of how much metadata the parties must produce. The Federal Rules clarify that point as well. Under Rule 34, in the absence for a request for a specific production form, the responding party "must produce [ESI] in a form or forms in which it is ordinarily maintained" or in a "reasonably usable form." Fed. R. Civ. P. 34(b)(2)(e)(ii). The Joint Report provides for the production of most ESI in non-native format or, in other words, a form other than the form in which it is ordinarily maintained. So that means that those documents must be produced in a reasonably usable form. Thus, unless a request for production contains more specific instructions,

8

any ESI produced in non-native format must include enough metadata to be reasonably usable to the requesting party.

Thus, the requirements in the Joint Report are co-extensive with the requirements of Rule 34. The court now turns to whether Han-Dee Hugo's complied with its obligation to produce ESI in a reasonably usable form.

### 2. Han-Dee Hugo's produced ESI in a reasonably usable form because its production was text searchable.

The parties disagree about whether Han-Dee Hugo's provided enough metadata to render its production reasonably usable. Without more metadata, Bah claims she will need to engage in a painstaking and time-consuming review of the documents. Han-Dee Hugo's on the other hand argues that its production is readily searchable and thus reasonably usable.

So what does it mean for an ESI production to be reasonably usable? Rule 34's Advisory Committee Notes explain that while the Rule does not require production in native format, it does not allow the responding party to produce ESI in "a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation." Fed. R. Civ. P. 34 Advisory Committee Note to 2006 Amendment. The Advisory Committee Note then explains that "[i]f the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature." *Id.* As the requesting party, Bah has the burden to show that ESI has not been produced in a reasonably usable format. *Id.* (stating that a requesting party may be entitled to production of ESI "in an additional form" if it "can show that the produced form is not reasonably usable").

The reasons why Bah believes Han-Dee Hugo's production is not reasonably usable are scattered throughout her brief. The court will address each one in turn.

9

Bah first claimed that the production was "completely unusable as produced." Mem. in Supp. at 2. But this statement is false. Bah's vendor could access the ESI Han-Dee Hugo's produced. And it appears that she can review the materials included in the production and conduct text-based searches. So this argument does not support Bah's claim that the production is not reasonably usable.

Next, Bah complains that the production lacks Bates numbers and the necessary metadata (known as parent/child fields) to determine whether one file was included as an attachment to another. The record, however, belies this contention. Han-Dee Hugo's ESI vendor explained that their production included fields for "Production Beg Bates and End Bates along with Production Beg Attach and End Attach." Email from Segel to Pencook (Mar. 18, 2024 12:46 p.m.), D.E. 29–4 at 1. Bah's ESI vendor acknowledged that these fields were included in the production. Email from Garrett to Hernandez (Feb. 27, 2024 4:11 p.m.), D.E. 27–4 at 2. So it appears that the production included Bates numbers. And, according to Han-Dee Hugo's vendor, "[p]roviding the production bates attach and production bates end metadata allows for the identification of documents that are attachments to others." Mar. 18, 2024 Email from Segel to Pencook. Bah has done nothing to refute this statement. So this argument does not support Bah's claim that the production is not reasonably usable.

Bah also claims that the production lacked metadata allowing her vendor to filter documents by date and to categorize documents by file type. Han-Dee Hugo's vendor acknowledges that those fields were not included. Mar. 18, 2024 Email from Segel to Pencook, D.E. 29–4 at 2. So the court must determine if the production is reasonably usable without this metadata.

10

Bah claims that it is not. But she cites no cases in support of that position. That omission may be the result of courts generally agreeing that, in most cases, a production is reasonably usable if it is text searchable. *Metro Serv. Grp., Inc.* v. *Waste Connections Bayou, Inc.*, No. 21–1136, 2022 WL 2255203, at *4 (E.D. La. May 31, 2022) (concluding a production was reasonably usable because the requesting party was "able to review the documents and they are searchable."); *United States Gypsum Co.* v. *Ectek Int'l, Inc.*, No. 1:19-CV-00596, 2022 WL 1206619, at *3 (N.D. Ill. Apr. 21, 2022) (requiring that "[f]or large electronic disclosures" ESI productions "must be 'searchable and/or sortable by metadata fields" to comply with the reasonably usable requirement); *Johnson* v. *Italian Shoemakers, Inc.*, No. 3:17-CV-00740, 2018 WL 5266853, at *2 (W.D.N.C. Oct. 23, 2018) (explaining that "a party satisfies it obligations under Rule 34 when the party provides documents that are searchable and/or sortable by metadata fields."); *Lutzeier* v. *Citigroup Inc.*, No. 4:14-CV-00183, 2015 WL 430196, at *8 (E.D. Mo. Feb. 2, 2015) (finding that ESI was produced in a reasonably usable form based on a representation that the production was "fully searchable, including the custodian and recipients of all emails."); *Indep. Mktg. Grp., Inc.* v. *Keen*, No. 3:11-CV-447, 2012 WL 207032, at *2 (M.D. Fla. Jan. 24, 2012) (holding that a party did not provide ESI in a reasonably usable format when it produced non-searchable PDF files).

What's more, focusing on whether a production is searchable aligns with the commentary in Rule 34's Advisory Committee Notes. That commentary says that "If the responding party ordinarily maintains the information it is producing in a way that makes it *searchable* by electronic means, the information should not be produced in a form that removes or significantly degrades *this feature*." Fed. R. Civ. P. 34 Advisory Committee Note to 2006 Amendment (emphasis added).

Han-Dee Hugo's production is text searchable. And there is nothing in the record establishing that the production is less searchable for Bah than it would be for Han-Dee Hugo's.

11

So, on its face, Han-Dee Hugo's production meets the requirement that ESI be produced in a reasonably usable format. Yet there may be cases where text-searchability is not enough to render ESI reasonably usable to the party requesting it. *See Delux Pub. Charter, LLC* v. *Cnty. of Orange*, No. 8:20-CV-02344, 2021 WL 4460333, at *4 (C.D. Cal. Aug. 2, 2021) (explaining that whether an ESI production is reasonably usable can depend on case-specific facts).

But Bah has not shown that this is one of those cases. Although Bah's counsel claims that the lack of file extension metadata limits impedes her eDiscovery software from functioning, she conceded that she can view the documents on her eDiscovery platform. Hr'g Tr. at 5:22–25. And even without the date-related metadata fields, the production can be searched for specific dates and specific individuals. Garrett Decl. ¶ 13, D.E. 34–3.

The court's efforts to delve further into the functionality of the eDiscovery platform chosen by Bah's counsel was frustrated by her counsel's lack of knowledge about how that system works. During the hearing Bah's counsel admitted that she has not used the system. Hr'g Tr. at 27:8–16. And she contradicted her vendor's claims about the production's searchability. *Compare id.* at 25:12–26:9 *with* Garrett Decl. ¶ 13.

The record also lacks any specific information about how much more onerous reviewing the production will be without this metadata. While Bah complains that her counsel will need to review each item to determine its relevance and evidentiary value, it is unclear how the added metadata would relieve her attorney of the need to undertake this work. Bah presumably requested the items Han-Dee Hugo produced because she believed they were relevant to her claims. So each item in the production would need to be reviewed in the ordinary course, no matter what metadata accompanied it. If, however, Bah did not narrowly craft her discovery requests and received many

responsive, but irrelevant or low-value documents, that is not a reason to impose additional burdens on Han-Dee Hugo's.

And it is also unclear to what extent this additional metadata would streamline Bah's ability to review the documents. While Bah laments her inability to sort and filter emails by date and custodian, there is no indication that emails were produced in anything other than an organized and orderly format. *See* Email from Segel to Pencook (Mar. 18, 2024 12:46 p.m.), D.E. 29–4 at 2 (explaining that documents were threaded as part of production). If there were evidence that Han-Dee Hugo's had produced ESI in a disorganized manner such that documents from different custodians were intermingled or that they were not produced in a chronological format, Bah's argument would be more compelling. Bah has also failed to establish what portion of the 13,000 pages of ESI involve emails, as opposed to other file types.

It appears that the production is reviewable and searchable, although not with the ease and sophistication that Bah prefers. But Rule 34 requires only that when ESI is produced in a non-native format, the chosen form must be reasonably usable by the requesting party. It does not require that ESI be produced in the form the requesting party prefers or the one that is the most easily usable by the requesting party. *See Delux Pub. Charter,* 2021 WL 4460333, at *4–5 (rejecting request to make party re-produce ESI with additional metadata after production of word-searchable PDFs that lacked metadata); *see also United States* v. *Satary*, No. 19–197, 2020 WL 5850163, at *8 (E.D. La. Oct. 1, 2020) (declining to require supplemental production of ESI produced in a searchable format but without the ability to "apply multiple search terms and connectors across multiple documents").

So since Bah did not request specific metadata fields in her requests for production and Han-Dee Hugo's production is reasonably usable, it has complied with its obligations under the

13

Joint Report and Rule 34. Thus there is no basis to grant Bah's motion to compel production of additional metadata. And given that conclusion, there is no basis to grant her request for a protective order or sanctions. Her motion is denied.

### III. Conclusion

For all these reasons, the court denies the motion to compel (D.E. 26). Each party will bear their own costs.

Dated: August 5, 2024

_____
Robert T. Numbers, II
United States Magistrate Judge