IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-00330-FL

**Muminatou Bah**,

    Plaintiff,

v.

**Sampson Bladen Oil Co., Inc. d/b/a/ Hand-Dee Hugo's**,

    Defendant.

**Order**

    Defendant Sampson Bladen Oil Co., Inc. d/b/a/ Hand-Dee Hugo's wants to depose Melanie Baporis because it believes she has information that is relevant to the claims in this case. It also wants her to turn over certain documents that it believes relate to this case. But its attempts to personally serve Bapoirs with subpoenas to achieve these ends have been unsuccessful. It now seeks permission to use an alternative method of service and to extend the discovery period to allow it to conduct her deposition. Plaintiff Muminatou Bah opposes these requests.

    The Federal Rules of Civil Procedure allow a party to use a subpoena to compel a non-party to appear at trial; sit for a deposition; produce documents, electronically stored information, or other tangible things; or "permit the inspection of premises[.]" Fed. R. Civ. P. 45(a)(1)(A)(iii). But before a non-party is obliged to do any of those things, the non-party must be properly served with the subpoena. *See MetroPCS* v. *Thomas*, 327 F.R.D. 600, 612 (N.D. Tex. 2018).

    In most cases, proper service involves two things. First, the subpoena must be served by someone "who is at least 18 years old and not a party[.]" Fed. R. Civ. P. 45(b)(1). And second, proper service "requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law."

*Id.* Federal courts are divided over whether Rule 45 requires personal service on a subpoena's target or whether it permits alternative methods of service. *See Hall* v. *Sullivan*, 229 F.R.D. 501, 502–06 (D. Md. 2005) (discussing the differing views among courts).

But the parties here are not. Both sides agree that alternative service is permissible. Mem. in Supp. at 6–7, D.E. 46; Resp. in Opp. at 3 ("Defendant could have simply served Melanie Baporis via U.S. certified mail from day one[.]"). Given the parties' agreement and Han-Dee Hugo's diligent efforts to personally serve Baporis, the court will grant this portion of Han-Dee Hugo's motion.

Resolution of the alternative service issue leaves the court with whether it should modify the scheduling order to allow Han-Dee Hugo's to take Baporis's deposition no later than 10 days after she is served with the subpoena. That modification is necessary because, with some exceptions not relevant here, discovery concluded on September 24, 2024. *See* Apr. 30, 2024 Order, D.E. 30 (extending discovery period until 50 days after ruling on a motion to compel); Aug. 5, 2024 Order, D.E. 41 (denying motion to compel). Bah argues that the court should deny that request because Han-Dee Hugo's has not diligently attempted to depose Baporis.

The Federal Rules allow a court to modify a scheduling order if a party shows "good cause" to do so. Fed. R. Civ. P. 16(b)(4). When considering if a party has met the good cause standard, "the primary consideration is the diligence of the moving party." *Dynatemp Int'l, Inc.* v. *R421A, LLC*, 672 F. Supp.F. Supp. 3d 87, 101 (E.D.N.C. 2023).

Given the circumstances of this case, the court finds that Han-Dee Hugo's has established good cause to extend the discovery period to allow for Baporis's deposition. With more than a month remaining in the discovery period, Han-Dee Hugo's began its attempt to serve Baporis with subpoenas. Over the next five weeks, its process server made eleven attempts to serve Baporis

with the subpoenas at three different addresses. Decl. of Marc Lugo ¶¶ 5, 6, D.E. 46–1. So Han-Dee Hugo's inability to depose Baporis is not due to lack of effort on its part.

Instead, it appears that Baporis (with the assistance of others) is actively evading service of Han-Dee Hugo's subpoenas. Decl. of Marc Lugo, D.E. 46–1. While Baporis originally took phone calls from the process server, since learning he wanted to serve her with documents, his calls have gone unanswered. *Id.* ¶¶ 6(b)–(d). And when the process server arrived at one of the addresses associated with Baporis, he was told by someone at that address that she did not want to receive any documents. *Id.* ¶ 6(e).

Furthermore, the court notes that Baporis is willingly working with Bah's counsel in this and other matters. An individual who works cooperatively with one side of a case while stymying efforts by the other side to obtain discovery adversely impacts the administration of justice. Denying the request to modify the scheduling order would reward this gamesmanship and encourage other potential witnesses to engage in similar conduct.

Bah criticizes Han-Dee Hugo's for waiting until late in the discovery period to attempt to serve Baporis. But the Federal Rules do not require parties to engage in discovery in any one sequence. *See* Fed. R. Civ. P. 26(d)(3). And given that there were several weeks left in the discovery period when the attempts at service began, this is not a case in which a party was making a last-second attempt to obtain discovery. Moreover, while Bah claims that Han-Dee Hugo's could have served Baporis by mail at any time instead of attempting personal service, there is no consensus in the federal courts on that point, and many courts disagree. So Bah's argument is not

persuasive.[1] The court thus finds that Han-Dee Hugo's has acted diligently in its attempts to serve Baporis, and thus it has shown good cause to modify the scheduling order.

For the reasons discussed, Han-Dee Hugo's motion (D.E. 45), is granted. The court orders that:

1. Han-Dee Hugo's may serve the subpoenas on Baporis via USPS Certified Mail, USPS Priority Mail, and Federal Express. The subpoenas must be sent to her within seven days from the date of entry of this order.

2. If attempts at service by mail are unsuccessful, Han-Dee Hugo's may, within 21 days from the date of entry of this order, send a copy of this order and the subpoenas to the United States Marshal's Service for the Eastern District of North Carolina. The United States Marshal must then attempt to personally serve the subpoenas on Baporis.

3. Under Rule 26(e)(1)(B), the court requires that no later than Wednesday, November 6, 2024, any party who included Baporis on its initial disclosures required by Rule 26(a)(1)A)(i) must supplement that disclosure to provide Baporis's current address and phone number. Similarly, if a party knows Baporis is reachable at multiple addresses or phone numbers, all of that contact information should be provided.

4. The court also amends the Case Management Order to allow Han-Dee Hugo's to depose Baporis no later than ten days after she is served with the subpoenas. All other deadlines remain in effect.

---

[1] Bah also argues that Han-Dee Hugo's motion should be denied because before filing its motion it did not make a good faith effort to resolve a discovery dispute or seek a telephonic conference with the presiding District Judge, as is required by the Case Management Order for discovery motions. Resp. in Opp. at 5–6. It is unclear that those requirements apply to this type of dispute which is focused on scheduling matters and involves a third-party who is resisting participating in this litigation. But to the extent those requirements apply, the record demonstrates that those efforts would have been unlikely to aid in the resolution of the disputed issues. So that argument does not provide a basis to deny the motion.

Finally, Bah's counsel claims that Han-Dee Hugo's has taken the position "that Plaintiff's counsel is somehow colluding with Ms. Baporis to . . . evade service from Defendant[.]" Resp. in Opp. at 3. Han-Dee Hugo's does assert that Baporis is "actively evading service of the Subpoenas[,]" Mem. in Supp. at 2, but, as far as the court can tell, does not accuse Bah's counsel of being involved in Baporis's evasion. The court does not infer that kind of allegation lightly since an attorney who aided in evading service of a subpoena would likely be violating the North Carolina Rules of Professional Conduct. *See* 98 F.E.O. 2 (Jan. 15, 1998). The court is confident all counsel are aware of their professional obligations and will not engage in conduct that gives rise to even the suggestion that unethical conduct is taking place.

Dated: November 4, 2024

_____
Robert T. Numbers, II
United States Magistrate Judge